UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FT. MYERS DIVISION

CASE NO: 08-CV-0611-FtM-29 SPC

JOSE MARTINEZ

    Plaintiff,

v.

TRG OASIS (TOWER TWO), LTD.,
a Florida limited partnership, TRG OASIS
(TOWER TWO), LLC, a Florida
limited liability company, THE RELATED GROUP
OF MIAMI, INC., a Florida profit corporation,
JORGE M. PEREZ, ROBERTO ROCHAS,
MATHEW ALLEN, JEFFREY HOYOS, HELEN
WEINSTOCK, and GARY ARTHUR,

    Defendants.
_____/

## THE DEVELOPER'S MOTION TO DISMISS, TO STRIKE, FOR ATTORNEYS' FEES, AND INCORPORATED MEMORANDUM OF LAW

Defendants, TRG Oasis (Tower Two) Ltd., a Florida limited partnership, TRG Oasis (Tower Two), LLC, a Florida limited liability company, and The Related Group of Miami, Inc., a Florida profit corporation (collectively the "Developers" or "TRG") move pursuant to Rules 8, 9, and 12 of the Federal Rules of Civil Procedure, to dismiss the Complaint and state as follows:

1.     On or about August 1, 2005, Jose Martinez entered into a Contract with TRG Oasis (Tower Two), Ltd. for the purchase of Unit 1702 in Oasis Tower Two, a Condominium (the "Condominium Project"). A copy of the Contract is attached to the Complaint as Exhibit 1.

2.     An investor suffering from buyer's remorse, no doubt occasioned by a struggling Florida real estate market, the Plaintiff seeks to avoid his contractual duty to purchase Unit 1702 through a variety of imaginative yet fatally flawed legal theories.

PMB 363100.1

3. Specifically, to avoid closing on the properties, the Plaintiff attempts to assert nine causes of action. Count I and II seek relief under the Interstate Land Sales Full Disclosure Act ("ILSA"). Count III asserts a violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Count IV alleges publication of false and misleading information. Count V travels under section 849.091(2), Florida Statutes—the "pyramid scheme" law. Count VI seeks a bill of discovery. Count VII seeks a vendees' lien and an equitable lien. Count VIII contends that the transactions at issue violate the Statute of Frauds, and Count IX alleges that the Contracts are void for want of definiteness.

4. For the many reasons that follow, the Complaint should be dismissed

## Memorandum of Law

### I.
### THE COMPLAINT VIOLATES RULE 8

The Federal Rules of Civil Procedure require that a complaint set forth a short plain statement of the ultimate facts establishing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). One need only peruse the 114 paragraph, hopelessly vague Complaint to conclude that the Plaintiff's hodgepodge of legal improvisation falls short of the pleading standards.

The Complaint is a recycled pleading which Plaintiff's counsel has used in at least eight other lawsuits, cutting and pasting virtually all but the party allegations.[1] The allegations are

---

[1] See, e.g., Wedderburn v. WCI Communities Inc., 17th Judicial Circuit in and for Broward County, Case No. 08-22476; Labiner v. CityPlace South Tower, LLC., 15th Judicial Circuit in and for Palm Beach County, Case No. 502008CA013488XXXXMB AB; Alfonso v. 901Brickell Ltd., 11th Judicial Circuit in and for Miami-Dade County, Case No. 08-31441CA06; Tesona v. TRG-Brickell Point West, Ltd., 11th Judicial Circuit in and for Miami-Dade County, Case No. 08-31410CA24; Harrison v. Tuscany Preserve Development, Inc., United States District Court, Middle District of Florida, Case No. 8:08-cv-00958-SDM-MSS; Widefield Capital, LLC v. ISSA Homes, Inc., United States District Court, Middle District of Florida, Case No. 6:08-cv-00694-JA-DAB; Paramo v. Imico Brickell, LLC, United States District Court, Southern District of Florida, Case No. 1:08-cv-20458-PCH; Parra v. Minto Townpark, LLC, United States District Court, Southern District of Florida, Case No. 2:08-cv-14168-DLG; France v. Riviera-Homes For America Holdings, LLC, United States District Court, Middle District of Florida, Case No. 2:08-cv-0381-JES-SPC.

generic and vague by design. Counsel's selection of the causes of action from lawsuit to lawsuit has no discernable relationship to the facts of each case. A carbon copy of those that came before it, the Complaint routinely fails to identify specific acts, fails to attribute conduct to particular persons or entities, and consists mostly of conclusory allegations. In fact, the Complaint lacks many allegations of ultimate fact at all.

Instead of identifying particular persons or entities responsible for particular acts, the Plaintiffs attempt to plead as broadly and loosely as the English language will allow, rendering such allegations exceedingly difficult, if not impossible at times, to admit or deny. See, e.g., Compl. at ¶¶ 22, 24, 25, 46, etc. Courts, including this District, are especially critical of *kitchen sink* pleadings like the Plaintiff's Complaint; they are strongly disfavored and subject to dismissal *sua sponte*:

> [T]he Amended Complaint is subject to dismissal *sua sponte*. Fed.R.Civ.P., authorizes "a short and plain statement of the claims showing that the pleader is entitled to relief." The Amended Complaint contravenes Rule 8. Moreover, by incorporating all preceding paragraphs in each count, the Amended Complaint is what the Eleventh Circuit calls "a quintessential example of what we and other courts have characterized as 'shotgun pleading.' "
>
> The Amended Complaint has prompted a lengthy motion to dismiss, certain to result in prolonged litigation focusing on the sufficiency of the pleadings, rather than on the merits of the dispute from which the allegations arise. It effectively sets the stage "for the immense and unnecessary expenditure of resources" which has been repeatedly criticized in this Circuit.
>
> Litigation of this nature places an undue burden on the Court's docket. It is likely to drive up the cost of this litigation, broaden discovery unnecessarily, cause avoidable discovery disputes, and impede the Court's ability to resolve the dispute efficiently.

S & B/Bibb Hines PB 3 Joint Venture v. Progress Energy Florida, Inc., 2008 WL 2275534 (M.D. Fla. June 2, 2008) (citations omitted). Stated plainly, Plaintiff's allegations are not stated

plainly, nor with sufficient detail to apprise TRG Oasis of that which it is called upon to answer. The Plaintiff's disregard for Rule 8 requires dismissal.

## II.
## GROUNDS UNIQUE TO SEPARATE COUNTS

### A. COUNT I is Time-Barred

Count I alleges that TRG Oasis failed to timely deliver the property report, and seeks rescission of the Contract. See Compl. at ¶¶ 39-41. Section 1703(c) provides a clear, albeit limited remedy to purchasers for failure to timely provide a property report:

> In the case of any contract or agreement for the sale or lease of a lot for which a property report is required by this chapter and the property report has not been given to the purchaser or lessee in advance of his or her signing such contract or agreement, such contract or agreement may be revoked at the option of the purchaser or lessee within two years form the date of such signing, and such contact or agreement shall clearly provide this right.

15 U.S.C. § 1703(c).

In this instance, the Plaintiff signed the Contract on August 1, 2005. The Complaint does not contain an allegation that Plaintiff attempted to revoke within two years of that date, and the Complaint was filed well after August 1, 2007. Thus, because the Plaintiff failed to exercise his alleged right to revoke within the statutory period based upon an untimely property report, his claim for revocation under section 1703(c) of ILSA is time-barred. See 15 U.S.C. § 1703(c), (d); Taylor v. Holiday Isle, LLC, -- F.Supp.2d --, 2008 WL 2222945 (S.D.Ala. May 30, 2008) (claim for revocation was time-barred where revocation was not sought within two years of signing the contract); Ditthardt v. North Ocean Condos, WL 2741114 (S.D. Fla. July 11, 2008) (same).

### B. COUNTS II AND IV Fail to State Claims for Fraud

Counts II and IV attempt to allege claims under ILSA's anti-fraud provisions contained in section 1703(a)(2) of Act, and section 718.506, Florida Statutes, respectively. Both Counts should be dismissed because Plaintiff fails to plead fraud with specificity and, more importantly, forgets that the Contract expressly precludes reliance upon oral representations.

#### 1. The Plaintiff Fails to Plead Fraud With Specificity Under Rule 9(b)

Fraud must be pled with specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). "Particularity" under Rule 9(b) requires a plaintiff to allege a time frame during which a purported misrepresentation was made, identify the person who made the purported misrepresentation, and allege the specific statement or statements upon which the claim is based. See, e.g., NCR Credit Corp. v. Reptron Electronics, Inc., 155 F.R.D. 690 (M.D. Fla. 1994). The Complaint comes up woefully short, for the Plaintiff fails to identify the person or persons who he contends made the alleged misrepresentations, nor does he identify when they were made. In any event, each and every purported misrepresentation identified in the Complaint is contradicted by the plain and unmistakable contractual provisions precluding reliance upon oral representations.

#### 2. The Terms of the Contract Negate the Plaintiff's Fraud Theory

The Contract bars reliance on purported misrepresentations such as those that form the basis of Plaintiff's fraud claims under ILSA (Count II) and under section 718.506, Florida Statutes (Count IV). First, at the top of the first page of the Contract, in capital and bold letters, the parties agreed that the Plaintiff was precluded from relying on oral representations:

> **ORAL REPRESENTATIONS CANNOT BE RELIED UPON AS CORRECTLY STATING THE REPRESENTATIONS OF THE DEVELOPER. FOR CORRECT REPRESENTATIONS, REFERENCE SHOULD BE MADE TO THIS CONTRACT AND THE DOCUMENTS REQUIRED BY SECTION 718.503, FLORIDA STATUTES, TO BE FURNISHED BY A DEVELOPER TO A BUYER OR LESSEE.**

Compl. at Exh. 1, p. 1 (emphasis original). Even more to the point, in paragraph 36 of the Contract, the parties agreed as follows:

> Buyer acknowledges, warrants, represents and agrees that this Agreement is being entered into by Buyer without reliance upon any representations concerning any potential for future profit, any future appreciation in value, any rental income potential, tax advantages, depreciation or investment potential and without reliance upon any monetary or financial advantage.
>
> Buyer acknowledges and agrees that no such representations, including representations as to the ability or willingness of Seller or its affiliates to assist Buyer in renting or selling the Unit, have been made by Seller, or any of its agents, employees or representatives. Buyer further represents and warrants to Seller that Buyer is entering into this Agreement with the full intention of complying with each and every obligations hereunder, including without limitation, the obligation to close on the purchase of the Unit. Neither Seller, nor anyone working by, through or under Seller, has made any statement or suggestion that Buyer would not be obligated to fully comply with the terms of this Agreement and to close on the purchase of the Unit. Further, Buyer understands and agrees that neither Seller, nor any brokerage company, on –site sales personnel and/or other persons working by, through or under Seller, are under any obligation whatsoever to assist Buyer with any resale of the Unit.
>
> Buyer warrants that Buyer has not relied upon any verbal representations or promises other than as expressly contained herein and in the Condominium Documents, including, specifically, but without limitation, any representation as to potential appreciation in or resale value of the Unit.

Compl. Exh 1, ¶36. The Plaintiff was required to initial each of the foregoing representations.

<u>Id</u>.

As though it were not clear enough that extracontractual representations may not be relied upon, the Contract also contains a merger clause:

> <u>Entire Agreement</u>. This Agreement is the entire contract for sale and purchase of the Unit and once it is signed, it can only be amended by a written instrument signed by the party against whom enforcement is sought which specifically states that it is amending this Agreement. This Agreement contains the entire understanding between Buyer and Seller. **Any current or prior agreements, representations, understandings or oral statements of sales representatives or others, if not expressed in this Agreement, the Condominium Documents or in brochures for the Condominium, are void and have no effect. Buyer has not relied on them.**

Compl. at Exh. 1, ¶ 40 (emphasis original).

Given these provisions that preclude reliance upon oral representations, and specifically those concerning investment potential, the Plaintiff's fraud theory fails. See <u>Garcia v. Santa Maria Resort, Inc.</u>, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007). In <u>Garcia</u>, which is also a "buyers' remorse" case, the plaintiffs attempted to allege fraud and misrepresentation claims, invoking ILSA and Chapter 718, Florida Statutes, as the Plaintiff attempts to do in this case. In the face of virtually identical contractual provisions excluding oral representations as those contained in the Plaintiff's Contract, the court concluded that the plaintiffs **could not have relied** upon extra-contractual statements and dismissed the plaintiffs' ILSA, negligent misrepresentation, and false advertising claims with prejudice. <u>Id</u>. at 1295; <u>Weaver v. Opera Tower, LLC</u>., United States District Court, Southern District of Florida, Case No. 07-23332, Order Granting Consolidated Motion to Dismiss (Aug. 1, 2008) ("given the Plaintiffs inability to properly allege 'reasonable reliance', the § 718.506 and § 1703 claims must be dismissed" with prejudice).

Where, as here, the documents attached to the Complaint expressly contradict allegations of misrepresentation, dismissal is warranted. <u>Id</u>.; <u>Rosa v. Amoco Oil Co.</u>, 262 F. Supp. 2d 1364,

1368 (S.D. Fla. 2003) (granting a motion to dismiss claims based on fraud, because the "plaintiff's reliance upon oral statements which were at variance with the written documents were not reasonable as a matter of law").

In this instance, the Contract plainly and completely negates the Plaintiff's contention that he relied upon misrepresentations purportedly made by TRG Oasis. Indeed, Paragraph 36 specifically bars reliance upon representations concerning investment potential. Because reliance is a necessary element of Plaintiff's claims under 15 U.S.C. 1702(a)(2) and Chapter 718, Counts II and IV should be dismissed with prejudice. See Garcia, 528 F. Supp. 2d at 1295 (dismissing for want of reasonable reliance).

### C. COUNT III Fails to State a Claim Under FDUTPA

Count II seeks relief under FDUTPA. Rather than identify specific actionable conduct to support the cause of action, the Plaintiffs incorporate the entirety of their allegations contained in Counts I, II, V and XIII. Thus, if this Court grants this Motion as to those Counts, there is no independent basis upon which Count III can survive. See Maguire v. Southern Homes of Palm Beach, L.L.C., 2008 WL 2474657, at * 7 ("Plaintiff's bare reliance on the [alleged violation of ILSFDA] that the Court has rejected does not, standing alone, provide a basis for a cause of action under FDUTPA either."); Morris Communications Corp. v. PGA Tour, Inc., 235 F. Supp.2d 1269, 1287 (M.D. Fla. 2002) ("As this court has found no violation of [the Federal Trade Commission Act, 15 U.S.C. § 41] and as [plaintiff] asserts no other basis for a claim under FDUTPA" the motion to dismiss the FDUTPA claim is granted).

### D. COUNT V Does Not Allege an Action for a Pyramid Scheme

Chapter 849, Florida Statutes, entitled "Gambling", criminalizes gambling activities such as running certain cardrooms, games of chance, lotteries, coin operated devices and the like. Fla.

Stat. §§ 849.01, 849.086, 849.09. It authorizes bingo. Fla. Stat. § 849.0931. It excludes bowling tournaments. Fla. Stat. § 849.141. It contains aggressive provisions for the seizure of property used in connection with an illegal lottery or gambling. Fla. Stat. § 849.36. In one of their least credible positions, Plaintiffs contend Chapter 849 applies to the purchase of condominiums. Compl. at ¶¶ 68-82.

The particular provision upon which Plaintiff relies applies to "chain letters [and] pyramid clubs" and declares them prohibited "lotteries." The statute defines a "pyramid sales scheme" as follows:

> [A]ny sales or marketing plan or operation whereby a person pays a consideration of any kind or makes an investment of any kind, in excess of $100 **and acquires the opportunity to receive** a benefit or thing of value **which is not primarily contingent on the volume or quantity of goods, services, or other property sold in bona fide sales to consumers**, and which is related to the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same sales or marketing plan or operation, is hereby declared to be a lottery.

Fla. Stat. § 849.091(2) (emphasis added).

In other words, a pyramid sales scheme, or lottery, is dependent upon **chance**. M. Lippincott Mortg. Inv. Co. of Fla. v. Childress, 204 So. 2d 919 (Fla. 1st DCA 1967) ("the essential elements of a lottery are (1) a prize, (2) awarded by chance, (3) for consideration"). The purchase of condominiums, on the other hand, is not dependent upon chance. One purchases the condominium, not the "opportunity to receive" the condominium. Unlike a pyramid scheme, the value of a condominium is contingent on the volume and other property sold in bona fide sales to consumers, *i.e.*, the "market." The Plaintiff's theory is the square peg to the Chapter 849's round hole.

Moreover, weighing against the unsupportable position that these transactions constitute a pyramid scheme, the Plaintiff expressly warranted that he did not rely upon any representation

concerning future profit, appreciation or investment potential:

> Buyer acknowledges, warrants, represents and agrees that this Agreement is being entered into by Buyer without reliance upon any representations concerning any potential for future profit, any future appreciation in value, any rental income potential, tax advantages, depreciation or investment potential and without reliance upon any monetary or financial advantage.

Compl. at Exh. 1, ¶ 36. In other words, the parties agreed that the transactions simply were not for the purpose of investment, which contradicts Plaintiff's contention that the subject transactions involved "the inducement of additional persons, by himself or herself or others, regardless of number, to participate in the same sales or marketing plan or operation." Fla. Stat. § 849.091(2). Indeed, if Plaintiff means to argue that he was engaged in attempting to induce others to participate in what they characterize as an investment scheme, not only do they implicate themselves as having violated the statutory scheme, but such conduct was by no means authorized by Developers or the Contracts. Count V is meritless.

**E.     COUNT VI: Plaintiff Fails to Plead an Action for Pure Bill of Discovery**

Count VI attempts to state a claim for Pure Bill of Discovery. Compl. at ¶¶ 100-104. The bill of discovery was available in equity courts prior to the Florida Legislature's adoption of the discovery rules used by federal courts in the late 1940's. Although the pure bill of discovery was not abrogated altogether by adoption of liberal discovery rules, its use should be "relatively rare." JM Family Enterprises, Inc. v. Freeman, 758 So. 2d 1175 (Fla. 4th DCA 2000). The court in Mendez v. Cochran, 700 So. 2d 46, 47 (Fla. 4th DCA 1997) explained that the cause of action may not be used as "'a fishing expedition to see if causes of action exist.'" Mendez, 700 So. 2d at 47 (quoting Public Supermarkets v. Frazier, 696 So. 2d 1369, 1371 (Fla. 4th DCA 1997)). Further, the cause of action is not available to "obtain a preview of discovery." Id. (citing National Car Rental v. Sanchez, 349 So. 2d 829 (Fla. 3d DCA 1977)). This case is unlike those

in which actions for a pure bill were blessed, such as Adventist Health System Sunbelt, Inc. v. Hegwood, 569 So. 2d 1295 (Fla. 5th DCA 1990), where the action was necessary to obtain discovery to support an expert opinion to satisfy the pre-suit requirement in a medical malpractice case. Rather, in this instance, there is no cognizable basis upon which this Court should entertain a bill of discovery. Count VI should be dismissed with prejudice.

### F.  COUNT VII Does Not State a Claim for Vendees Lien or Equitable Lien

Plaintiffs' Count VII impermissibly combines separate theories for relief. Compl. at ¶¶ 88-95. Both nonetheless fail to state a cause of action. The Plaintiff apparently based Count VII on a claim raised in the Garcia case which, under virtually identical circumstances, was dismissed with prejudice:

> An equitable lien can only exist when a party has a "special right to a particular property" and there is no adequate remedy at law. Therefore, Count VII likewise fails, and is dismissed with prejudice.

Garcia, 528 F. Supp.2d at 1297 (citations omitted). There is no material distinction between Count VII in the case before the Court and Count VII in Garcia. It too should be dismissed with prejudice.

### G.  COUNT VIII:  The Contract Does Not Violate the Statute of Frauds

In Count VIII of the Complaint, the Plaintiff contends that because the Condominium Declaration was not recorded at the time the Contract was formed, the Contract violates the Statute of Frauds (Fla. Stat. § 725.01). Compl. at ¶¶ 96-99. The claim is specious. First, the sale of condominiums prior to recordation the Condominium Declaration is expressly authorized by Florida law, and the description of the property contained in the Contract adheres to the letter of the Condominium Act. See Fla. Stat., Ch. 718.

Additionally, the Contract satisfies section 725.01, Florida Statutes. Florida's Statute of Frauds precludes oral conveyances of land. Fla. Stat. § 725.01. It does not address *recording* condominium declarations. Id. Rather, in the instance of a real property transaction, the statute requires (1) that the contract is embodied in one or several written documents signed by the party against whom enforcement is sought, and (2) that the writings include all of the essential terms of the sale. Vaux v. Westwood Baptist Church, 953 So. 2d 677 (Fla. 1st DCA 2007). There is no allegation, let alone credible argument, in this case that the Contract fails to satisfy either of the criteria.

> The identical theory was raised and rejected as "meritless" in Garcia:
>
> Count VIII seeks a declaration that the Purchase Contracts violate the Statute of Frauds. **This argument is meritless.** The Purchase Contracts are in writing and sufficiently describe the real property to be purchased. Moreover, Florida law expressly provides for the selling of condominium units by a developer prior to recordation of the condominium documents. Accordingly, Count VIII is also dismissed with prejudice.

528 F. Supp.2d at 1297. This Court should follow Garcia and dismiss Count VIII with prejudice. What was "meritless" there is equally meritless here.

## I. COUNT IX for Declaratory Judgment Fails Because the Contract is Sufficiently Definite

### 1. The Florida Condominium Act Permits Developers to Reserve Discretion to Make Changes

Count IX seeks to invalidate the Plaintiff's Contract on the theory that it lacks sufficiently definite terms. Compl. at ¶¶ 100-114. The Plaintiff alleges that the Developer's "broad discretion to make changes in the condominium and units" renders the Developer's obligation to perform illusory. See Compl. at ¶¶ 102, 104, 105, 107, 108, 109, 110, 112. However, the Plaintiff again ignores Florida's Condominium Act, which speaks rather squarely to the issue.

The Condominium Act expressly permits developers to sell condominiums before they are built. Fla. Stat. § 718.503; F.A.C. 61B-17.006. It also contemplates that developers will reserve discretion to make adjustments throughout the construction process. Id. The Plaintiff's Contract contains a "Buyer's Right to Cancel" provision, reflecting the parties' intent to adhere to the terms of Chapter 718:

> Buyer's Right to Cancel. THIS AGREEMENT IS VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF EXECUTION OF THIS AGREEMENT BY THE BUYER, AND RECEIPT BY BUYER OF ALL OF THE ITEMS REQUIRED TO BE DELIVERED TO HIM OR HER BY THE DEVELOPER UNDER SECTION 718.503, FLORIDA STATUTES. **THIS AGREEMENT IS ALSO VOIDABLE BY BUYER BY DELIVERING WRITTEN NOTICE OF THE BUYER'S INTENTION TO CANCEL WITHIN 15 DAYS AFTER THE DATE OF RECEIPT FROM THE DEVELOPER OF ANY AMENDMENT WHICH MATERIALLY ALTERS OR MODIFIES THE OFFERING IN A MANNER THAT IS ADVERSE TO THE BUYER**. ANY PURPORTED WAIVER OF THESE VOIDABILITY RIGHTS SHALL BE OF NO EFFECT. BUYER MAY EXTEND THE TIME FOR CLOSING FOR A PERIOD OF NOT MORE THAN 15 DAYS AFTER THE BUYER HAS RECEIVED ALL OF THE ITEMS REQUIRED. BUYER'S RIGHT TO VOID THIS AGREEMENT SHALL TERMINATE AT CLOSING.

Compl., Exh. 1 at ¶ 25 (emphasis added). Developer's obligations under the Contact are not indefinite nor are they illusory at all; to the contrary, by the express language of the Contract, Developers are conscribed to exercise their discretion such that changes are not material and adverse. See Fla. Stat. § 718.503. Otherwise, the Plaintiff *could have* exercised his right to rescind under the statute and paragraph 25 of the Contracts, which leads to another fatal flaw in Count IX: the Plaintiff does not contend that he attempted to exercise but was wrongfully denied a right of rescission. Id. Rather, he claims that the mere reservation of right to make changes voids the agreement. The argument flies in the face of the statutory scheme.

Liability under section 718.503 "turns on whether the **developer's actions**, as a matter of law, constitute an amendment which materially alters or modifies the offering in an adverse manner." In re Suncoast East Associates, 241 B.R. 476 (S.D. Fla. Bkrtcy 1999) (citing BB Landmark, Inc. v. Haber, 619 So. 2d 448, 449 (Fla. 3d DCA 1993). If the change is material and adverse, the buyer's right to rescind is reinvigorated by the change. The statute "requires the rescinding party to prove that the change was both material and adverse to the property purchased." Id. (citing Oceania Joint Venture v. Trillium, Inc., 681 So.2d 881, 884 (Fla. 3rd DCA 1996)); D & T Properties, Inc. v. Marina Grande Associates, Ltd., --- So. 21d ---, 2008 WL 2356855 (Fla. 4th DCA 2008) (illustrating proper inquiry when count is faced with claim for rescission based on material and adverse changes).

In other words, a developer is not permitted to exercise its rights arbitrarily and capriciously without consequence. And more importantly, a buyer cannot rescind unless and until the reservation of right to change is exercised to the material disadvantage of the buyer. Fla. Stat. § 718.503. Given the protections afforded a buyer under the statute, the Contracts can hardly be said to be illusory or indefinite. Id. The Plaintiff's allegation that certain provisions in the Contract *might* be exercised in a manner that *could* disadvantage him is simply not a basis to undo a valid Contract. See Vance v. Roberts, 96 Fla. 379, 387 (Fla. 1928) ("The definiteness of a contract is judged at the time it is sought to be enforced").

2. The Parties Agreed to Material Terms

Indefiniteness is not a cause of action but an affirmative defense barring enforcement of a contract. See Jay Vee Realty Corp. v. Jaymar Acres, Inc., 436 So. 2d 1053, 1055 (Fla. 4th DCA 1983). Barring enforcement of a contract for indefiniteness is "at best a last resort." Gregg v. U.S. Industries, Inc., 715 F. 2d 1522, 1537 (11th Cir. 1983). The test for indefiniteness is

whether the intent of parties may be ascertained to a reasonable degree of certainty. <u>Blackhawk Heating & Plumbing Co.</u>, 302 So. 2d 404, 409 (Fla. 1974) (<u>quoting</u> <u>Williston on Contracts</u> (citation omitted)). Only the essential terms of the agreement need be discernable. <u>Robbie v. City of Miami</u>, 469 So. 2d 1384, 1385 (Fla. 1985). In other words, parties are not required to determine *non*-material elements. <u>Id</u>. What constitutes essential elements is determined by the court on a case by case basis. <u>Id</u>.

Florida courts recognize that in the complex undertaking of construction, performance under contracts "rarely, if ever" matches up exactly as the contract is written. <u>Leopold v. Kimball Hill Homes Florida, Inc.</u>, 842 So. 2d 133, 137 (Fla. 2nd DCA 2003). Construction contracts will be enforced -- even when the building plans are not yet in creation -- as long as the buyer and builder have established essential elements such as location, price and maximum square footage. <u>Id.</u> at 136-37. To contend that the Contracts fail to establish the essential elements of the transaction is plainly absurd. Compl. at Exh. 1.

**Motion to Strike**

In the *ad damnum* clauses for Counts III, IV, V, VIII, IX, Plaintiff demands attorneys' fees pursuant to section 57.105, Florida Statutes. The demands run afoul of the procedural requirements of the statutory scheme and should be stricken from the Complaint. <u>See</u> Fla. Stat. § 57.105.

**Motion for Fees**

The Developers are entitled to their reasonable attorneys' fees and costs pursuant to the Contract, which provides as follows:

> <u>Litigation</u>. In the event of any litigation between the parties under this Agreement the prevailing party shall be entitled to reasonable attorneys', paralegals and para-professionals fees and court costs at all trial and appellate levels.

Compl. at Exh. 1, ¶ 16. Accordingly, the Developers hereby request an award of its attorneys' fees and costs incurred in defending against the Plaintiff's spurious Complaint.

WHEREFORE, the Developers respectfully requests the entry of an Order dismissing all Counts of the Complaint with prejudice, striking all improper demands for sanctions under Fla. Stat. § 57.105 for any applicable Counts that are not dismissed, awarding the Developers their reasonable attorneys' fees and costs, and granting such additional relief as this Court deems just and proper.

**Counsel for Defendant TRG Oasis Lower (Tower Two), LLC, TRG Oasis (Tower Two), Ltd., LP, The Related Group Of Miami, Inc.**

By: s/ Betsy L. McCoy
Betsy Lu McCoy
Florida Bar No. 813036
315 S. Biscayne Boulevard, 4th Floor
Miami, Florida 33131
Telephone: (305) 533-0043
Facsimile: (305) 533-0086
Email: bmccoy@relatedgroup.com

### CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2008, I have electronically filed the foregoing with the Clerk of the Court pursuant to Administrative Procedures for Filing in Civil and Criminal cases of the Southern District of Florida by using the CM/ECF system, which will send a notice of electronic filing to All Counsel on the attached Service List.

s/ Betsy L. McCoy
Betsy Lu McCoy

# SERVICE LIST

***Counsel for Plaintiff***
Jonathan H. Kline, Esq.
Jonathan Kline, P.A.
2761 Executive Park Drive
Weston, Florida 33331
Telephone: 1-954-659-1919
Facsimile: 1-954-659-9937
Email: jonathan.kline@jklawfl.com

***Counsel for Defendant TRG Oasis Lower (Tower Two), LLC,***
***TRG Oasis (Tower Two), Ltd., LP, The Related Group***
***Of Miami, Inc.***
Betsy L. McCoy
Florida Bar No. 813036
315 S. Biscayne Boulevard, 4th Floor
Miami, Florida 33131
Telephone: (305) 533-0043
Facsimile: (305) 533-0086
Email: bmccoy@relatedgroup.com